

Pillsbury Winthrop Shaw Pittman LLP
Four Embarcadero Center, 22nd Floor | San Francisco, CA 94111-5998 | tel 415.983.1000 | fax 415.983.1200
MAILING ADDRESS : P.O. Box 2824, San Francisco, CA 94126-2824 | San Francisco, CA 94111-5998

Kenneth E. Keller
tel: 415.983.1084
kenneth.keller@pillsburylaw.com

November 16, 2020

VIA ECF

The Honorable Robert M. Levy
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: AirWair International Ltd. v. Primark US Corp. and Primark Ltd.
Case No.: 1:19-cv-06189-LDH-RML

Dear Magistrate Judge Levy:

We represent the Plaintiff AirWair International Ltd. ("AirWair") in the above-referenced action. AirWair files this letter brief in response to Defendants' letter brief of November 10, 2020 regarding the entry of a protective order in this case. As Primark has indicated, these are the issues raised by Primark's letter brief: (1) whether the Protective Order should limit use of confidential documents to this action only rather than also being available for use in parallel litigation in other jurisdictions involving the identical infringing shoe models involved in this case, (2) whether the Protective Order should have an ATTORNEYS' EYES ONLY ("AEO") designation, and (3) whether such AEO designation should be limited to only outside counsel in this litigation and bar any in-house counsel for Airwair from receiving AEO materials.

## I. INTRODUCTION

Protective orders balance the need of a party to litigation to view and use confidential documents belonging to its litigation opponent with the need to protect the confidentiality of such documents. Protective orders are not meant to be substantive swords and shields that provide a legal advantage in a dispute. Primark's proposed protective order limits the use and dissemination of confidential documents produced in this case to only this action and to only U.S. outside counsel, despite the fact that these parties are also embroiled in litigation over the exact same infringing shoe models in other jurisdictions. Primark's purpose in so limiting the use of confidential documents, which can be gleaned by its litigation strategy here and

abroad, is not to protect the confidentiality of the documents but to gain a substantive advantage in its litigation strategy. This is not an appropriate use of protective orders.

Specifically, Primark does not want documents relating to the design and supply chain of the infringing footwear produced in this case to be made available to AirWair's in-house counsel and/or to be used in parallel proceedings. This is because Primark has taken the position that its international subsidiaries, like Defendant in this case, Primark US and Primark Netherlands B.V. (the defendant in the parallel Dutch proceedings Primark's letter brief references), have no design responsibility for the infringing footwear at issue in both cases. However, one distinction is that the parent company Primark Ltd.—which counsel for Primark Ltd. in this action represented has some role in design of the footwear at issue—is not a defendant in the Dutch proceedings, while it is a defendant here. Primark has taken full advantage of that difference in the Dutch proceedings and, as Primark noted, initially escaped an injunction (currently on appeal) by claiming the defendant has no responsibility for design, a key component of one of the claims in the Netherlands, while omitting that it is Primark Netherlands B.V.'s parent that designed the shoes.

Undoubtedly, the Dutch courts would certainly be interested in such a material omission. Primark's attempts to limit use of documents produced in this case to just this action is meant to protect this tactic in the EU, not to protect the confidentiality of the documents themselves. The limited AEO designation, too, is likewise meant to ensure that in-house counsel in charge of global enforcement for AirWair cannot see the design documents that may influence the outcome of the parallel EU proceedings. This is an improper use of protective orders.

Accordingly, AirWair asks this Court to enter the draft protective order submitted with the declaration of Kenneth E. Keller filed and served herewith ("Keller Decl."), which only includes one level of confidentiality (non-AEO) in line with Your Honor's standard confidentiality order and limits use of documents produced in this case to this action and any substantially related litigation, such as the Dutch Proceedings.

## II. ARGUMENT

### A. Limiting Use of Confidential Documents To This Litigation Is Inappropriate Because Defendants Seek To Do So In Order to Evade Liability, Not Protect Confidentiality.

Protective orders serve to preserve the confidentiality of a party's documents while providing their litigation opponents the opportunity to view and use them in litigation between the parties. One size does not fit all, and the unique circumstances of each case may warrant additional terms that suit the particular needs of a case. Here, AirWair asserts that the protective order entered in this case should allow for documents and information discovered in this case to be used in this case, as well as

in parallel litigation involving the sale of the same infringing footwear by a Primark entity and the same trade dress asserted by AirWair here.

Primark has sold the exact same infringing footwear at issue in the United States and in the EU. In discovery in this case, Primark US has stated that it did not design the infringing footwear. *See* Response to Interrogatory No. 7, attached as Ex. A to Keller Decl. By contrast, in response to the same interrogatory, Primark Ltd. objected, despite the clear relevance of such information, and refused to respond regarding its role in the design process. *See* Response to Interrogatory No. 7, attached as Ex. B to Keller Decl. However, in a meet and confer call on October 6, 2020, the parties discussed AirWair's request for documents regarding Primark's suppliers. When asked to explain the "relevance" of such documents, Airwair's counsel explained that if the supplier was designing the footwear, such documents clearly are relevant, even though relevance is not the standard for discoverability. In response, Defendants' counsel stated that Primark Ltd. did have a role in the design of the infringing footwear and that the discovery responses indicated that to be the case. Apparently, Defendant's counsel forgot that they had only objected to this interrogatory. Keller Decl., ¶¶ 3-4. In a further meet and confer conference on November 16, 2020, Defendants' counsel would not elaborate on Primark Ltd.'s role in the design process but instead indicated the documents Defendants would produce would shed light on that issue. Keller Decl., ¶¶ 3-4.

Design of the infringing footwear is a crucial aspect of this dispute. Because Primark Ltd. is a defendant in this case, it must produce documents related to design in discovery. But, using the protective order as a tool for its litigation advantage, Primark seeks to shield from use in the Dutch Proceedings those very same documents, where Primark Ltd. is not a defendant.

That litigation advantage is not theoretical. One of the claims in the Dutch Proceedings is that Primark Netherlands B.V. (the defendant there) "slavishly" copied AirWair's Dr. Martens Trade Dress Marks. Primark Netherlands B.V. skirted an injunction by claiming it did not design the footwear at issue and instead purchased finished goods (*i.e.*, it could therefore not have "slavishly" copied the Dr. Martens Trade Dress Marks). *See* Primark Conclusion Of Reply In Brief Ceding at pp. 43-44, attached as Ex. C to Keller Decl. Primark Netherlands B.V. omitted the design role its parent (and ostensible source) played in the design of the infringing footwear. These representations and omissions were a significant reason AirWair was not granted an injunction, which decision is now on appeal. Defendants seek here to preclude use of design documents to bolster their litigation strategy in the Dutch Proceedings, not to preserve confidentiality.

There is therefore an interest in transparency and parity in using documents produced in one case in the other. Moreover, even *Sony Computer Entm't Am., Inc. v. NASA*, cited by Defendants implies that use of documents produced in one litigation is

appropriate in a substantially related litigation. 249 F.R.D. 378, 384 (S.D. Fla. 2008)("Thus, the protective order in this case must balance SCEA's right to use relevant confidential materials in the course of the present litigation with Defendants' well-founded concern that confidential materials it turns over during discovery are not used or disclosed in connection with any other litigation *that is not substantively related to this case*.")(emphasis added). This statement in *Sony Computer* thus supports the notion that the limitations on use of confidential documents in one litigation do not extend to substantially related litigation, only to unrelated litigation. Use of documents on design and supply chain, which speak directly to the identical issues and subject matter in this case and the parallel Dutch Proceedings, is paramount for AirWair to litigate this international dispute. And because the Dutch Proceedings concern the exact same infringing footwear and the same trade dress of Plaintiff's, there is no issue that confidentiality will not be appropriately preserved. This is not a situation where AirWair seeks to use such confidential documents in some unrelated or contemplated future transaction or litigation—quite the contrary.

*In re Am. Express Anti-Steering Rules Antitrust Litigation*, 2012 WL 13098456 (E.D.N.Y. 2012), also does not support Defendants' position. Though the protective order in place there may have limited use of documents produced to that litigation alone, there was no related litigation to which such documents were also directly relevant. The same is true of *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010), cited by Defendants. So while typically protective orders may limit use of documents to the specific litigation at hand, that is because most cases do not involve parallel disputes over the exact same legal and factual issues.

This case therefore warrants a departure from a limitation to just this action. If this Court limits use of documents produced here by Defendants to this action only, it will effectively prohibit AirWair from using such documents in parallel proceedings involving the identical subject matter and legal issues in the EU. Such a prohibition will not serve to retain the confidentiality of the documents. It will, however, hamper AirWair's ability to resolve this global dispute while enabling Primark to use the protective order to withhold crucial, pertinent information in the Dutch Proceedings. That is an inappropriate use of protective orders.

This Court should therefore adopt the protective order proposed by AirWair attached as Exhibit D to the Keller Declaration.

**B. <u>An AEO Designation Is Unnecessary Altogether and, If Adopted, Should Not Exclude In-House Counsel for Plaintiff.</u>**

The party seeking a protective order bears the burden of proof for why it is needed. *In re Deutsche Bank*, 605 F.3d at 1378. "Ordinarily, a party to an action does have the right to review all material produced in discovery except in the rare instance where a trade secret may not be disclosed even to a party." *Vesta Corset*

*Co., Inc. v. Carmen Foundations, Inc.*, No. 97 Civ. 5139, 1999 WL 13257, at *2 (S.D.N.Y. Jan.13, 1999). There is no presumption of entitlement to a confidentiality designation, and the party producing the documents at issue bears the burden of establishing the need for a confidentiality designation. *U2 Home Entm't, Inc. v. KyLin TV, Inc.*, 2008 WL 1771913, *2 (E.D.N.Y. 2008). Defendants have failed to meet their burden to justify an AEO designation.

For example, Defendants fail to mention the types of documents and information that they assert are so sensitive that an AEO designation is warranted to avoid disclosure to non-lawyers. None of the documents that are being requested are a trade secret of Defendants, and Defendants have proffered no basis for claiming that they are.

AirWair notes that Your Honor's standing confidentiality order contains no AEO designation. Defendants do not identify any types of documents that they will be producing that are so sensitive that only lawyers can review them. Thus, Defendants have not established the need for such a restrictive designation. AirWair asserts there is no such need.

Further, even assuming an AEO designation were appropriate, Defendants provide no justification for why such a designation should exclude in-house counsel for AirWair. Instead, Defendants cite to *Sony Computer* for the proposition that, in that case, an AEO designation excluding in-house counsel was appropriate. (Dkt. No. 21, p. 2.) Sony Computer is inapplicable on that point.

In *Sony Computer* the plaintiff sought a protective order that would allow its in-house counsel to review AEO documents that could speak to non-related litigation and contracts, not just the litigation at hand. 249 F.R.D. at 381-82. The Court described a multi-factor test for whether an attorney representing a party (whether in-house or retained) should be able to view an opponent's confidential AEO documents. Notably, defendants have not engaged in any discussion of this multi-factor test, failing to meet their burden. Moreover, as noted in Section II.A., *Sony Computer*'s ruling to limit in-house counsel's exposure to AEO documents stemmed from a concern that she would not be able to compartmentalize confidential information with respect to unrelated litigation or transactions.

Here, AirWair's in-house counsel needs access to Primark's documents, particularly those related to liability and damages, to properly evaluate, manage, and resolve ***this*** litigation. In addition, the documents are relevant to parallel litigation over the exact same infringing footwear and same trade dress. Further, without the ability to know what types of documents Defendants claim are subject to such a restrictive designation, or why their disclosure to in-house counsel would pose such a grave threat to the confidentiality of those documents, Defendants have failed to meet their burden.

The remaining case law cited by Defendants is equally inapplicable or unhelpful. *See, e.g., U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984); *Koninklijke Philips N.V. v. iGuzzini Lighting USA, Ltd.*, 311 F.R.D. 80, 83 (S.D.N.Y. 2015); *Vesta Corset Co., Inc. v. Carmen Foundations, Inc.*, No. 97 Civ. 5139, 1999 WL 13257, at *3 (S.D.N.Y. Jan.13, 1999). First, Defendants cite *U.S. Steel Corp.* for the general proposition that a court may consider whether competitive decision making by in-house counsel might warrant restricting access to confidential information. Once again, however, Defendants neither explain what documents they may produce warrant such a restrictive designation, nor what competitive decision making AirWair's in-house counsel has.

Second, *Vesta Corset* did not address an AEO designation restricting access to only outside counsel and specifically focused on whether trade secrets or other proprietary information would be covered by the protective order. Defendants have not divulged the nature of the highly sensitive documents that would fall within its proposed AEO designation. Third, *Koninklijke Philips* dealt with whether a patent prosecution bar should preclude in-house counsel, who had responsibility for potentially competitive patent prosecution, should be prohibited from seeing technical documents. 311 F.R.D. at 85. Such patent prosecution bars are creatures exclusively of patent cases. *Id*. Nothing about the patent prosecution bar doctrine applies to trade dress cases.

Taken together, Defendants seek to shield documents from AirWair's in-house counsel, not to preserve confidentiality but to gain litigation advantage in the Dutch Proceedings by precluding disclosure of crucial documents on the design and supply chain of the identical infringing footwear at issue there. Those documents are crucial for AirWair's in-house counsel to address this case, first and foremost. That they also have relevance to parallel litigation over the same infringing footwear underscores the need for such disclosure, not the need to prevent it. Otherwise, Defendants are improperly attempting to weaponize the protective order.

## III. <u>CONCLUSION</u>

AirWair seeks entry of a protective order that use of documents produced in this case in other litigation in parallel litigation involving the same infringing footwear. Specifically, AirWair seeks the entry of the Confidentiality Order attached as Exhibit D to the Keller Declaration. Allowing AirWair to use documents relating to the footwear to resolve this global dispute is appropriate under the circumstances. Further, AirWair asserts that an AEO designation is unnecessary and that Defendants have failed to meet their burden to establish the need for such a designation. If the Court adopts an AEO designation, however, AirWair asserts it should not exclude sharing AEO-designated documents with AirWair's in-house counsel, as Defendants have not made any showing for such a further limitation on the use of confidential

documents. Those documents are key to allow in-house counsel to properly evaluate and resolve this action.

Respectfully submitted,

/s/ Kenneth E. Keller
Kenneth E. Keller

cc: All Counsel of Record (via ECF)